

# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

JEAQUEIRA BUCHANAN,      :
      :
    Plaintiff,      :
      :        **CIVIL ACTION NO.:**
    v.      :
      :        **2:11-CV-4597-CDJ**
CAROLYN W. COLVIN,      :
      :
    Defendant.      :

## MEMORANDUM

**Judge C. Darnell Jones, II**                     **January 30, 2014**

Pending before the court is the report and recommendation of Judge Lynne A. Sitarski. (Doc. No. 21.) Plaintiff filed timely objections to the report and recommendation on September 16, 2013, (Doc. No. 22), and defendant filed a timely response on September 20, 2013 (Doc. No. 23). As such, this matter is ripe for review. After a thorough review of the report and recommendation and the administrative record the court will **ADOPT** the Report and Recommendation **IN PART** and **DECLINE TO ADOPT IN PART**. This matter will be **REMANDED** to the Commissioner of Social Security for further proceedings in order to properly consider the effect of plaintiff's obesity on her residual functional capacity.

## STANDARD OF REVIEW

When timely objections are filed to the report and recommendation of a magistrate judge, the district court must review *de novo* those portions of the report and recommendation to which objection is made. 28 U.S.C. §636(b)(1). If there are no objections to the report and recommendation or when reviewing those portions of the report and recommendation to which no objections are directed, the court should, as a matter of good practice, "satisfy itself that there is no clear error on the face of the record in order to accept the recommendation." Fed.R.Civ.P. 72(b), advisory

committee notes; *see also Henderson v. Carlson*, 812 F.2d 874, 878 (3d Cir. 1987).

## DISCUSSION

**I.     The ALJ Did Not Properly Consider the Effects of Plaintiff's Obesity**

At issue is whether the Administrative Law Judge properly considered plaintiff's obesity in making a determination as to her residual functional capacity. The Third Circuit has stated that "an ALJ must clearly set forth the reasons for his decision. Conclusory statements that a condition does not constitute the medical equivalent of a listed impairment are insufficient." *Diaz v. Comm'r of Soc. Sec.*, 577 F.3d 500 (3d Cir. 2009). While there is no formulaic prescription for recording the ALJ's findings, there must be sufficient analysis to allow "meaningful judicial review." *Thomas v. Comm'r of Soc. Sec. Admin.*, 625 F.3d 798, 800 (3d Cir. 2010).

In this case, the record shows that plaintiff failed to raise the issue of obesity in her complaint; rather, the ALJ independently identified obesity as a severe impairment. (Doc. No. 21 (R&R)). Nonetheless, the parties concede that an ALJ is always required to consider obesity, regardless of whether a claimant raises the issue in the first place. *Ellis v. Astrue*, 09-CV-1212, 2010 WL 1817246, *4 (E.D.Pa. 2010). Furthermore, the record shows that the ALJ *sua sponte* addressed plaintiff's obesity and determined that it was a severe impairment. (R. at 13.) As such, it is irrelevant that plaintiff did not raise the issue of obesity; this court is obligated to review the issue. (R. at 13.)

On finding that claimant was obese and that her obesity constituted a severe impairment, the ALJ nonetheless determined that she had the residual functional capacity to perform a range of sedentary level exertional work, (R. at 16), found that there are jobs that exist in significant numbers in the national economy that the claimant can perform, (R. at 19), and denied her claim for social security benefits. The ALJ spoke generally about her obligation to consider obesity, relied on medical evidence from a doctor who was aware of plaintiff's obesity, stated that consideration was given to

2

all plaintiff's impairments, and gave plaintiff the benefit of the doubt by finding plaintiff more limited

that originally thought. (R&R at 12.) Nonetheless, the court believes that the ALJ failed to clearly set

forth the reasons supporting her decision insofar as plaintiff's obesity is concerned.

In *Diaz v. Commissioner of Social Security*, the Third Circuit explained that general

statements of the judge's obligation to consider evidence are insufficient. *Diaz v. Comm'r of Social*

*Security*, 577 F.3d 500 (3d Cir. 2009) ("Hence, an ALJ must *meaningfully* consider the effect of a

claimant's obesity, individually and in combination with her impairments."). "An ALJ must clearly

set forth the reasons for his decision" and must discuss the evidence instead of making conclusory

statements. *Id.* Here, the ALJ spoke about her obligation to consider obesity and stated that she

considered all of plaintiff's impairments. These statements, by themselves, are simply insufficient

to apprise the court of the ALJ's rational as to what role plaintiff's obesity played in the ALJ's

decision. Furthermore, giving plaintiff the benefit of the doubt and finding her more limited in her

physical abilities than originally thought similarly falls short of elucidating the basis for the Judge's

decision.

Defendant nonetheless contends that the ALJ properly considered plaintiff's obesity because

the ALJ relied on the opinion of a state agency physician who in turn incorporated into her report a

discussion of the effect of plaintiff's obesity on her ability to do physical labor. (Resp. at 4.) In

*Rutherford v. Barnhart*, the Third Circuit found that it was permissible under some circumstances

for an ALJ to rely on a physician's conclusions so long as those conclusions take into account the

claimant's obesity. *Rutherford v. Barnhart*, 399 F.3d 546 (3d Cir. 2005). Essentially, the court

allowed the ALJ to indirectly consider obesity by adopting the physician's findings, which in turn

analyzed obesity.

That holding was expressly limited in *Diaz* where the court found:

3

Citing *Rutherford v. Barnhart*, the government urges that the 'ALJ's adoption of their [Drs. Merlin, Ptashnik, Tiersten, and Fechner's] conclusions constitutes a satisfactory, if indirect, consideration of that condition [obesity]." Respondent's Br. at 29; *see* 399 F.3d at 552. Significantly, however, in *Rutherford*, the claimant did not assert obesity as an impairment, nor did the ALJ note, or discuss, it. On appeal, Rutherford urged that the ALJ was required to consider her obesity explicitly and, therefore, remand of the case was required. We noted that the references to obesity in the doctor's reports were sufficient to put the ALJ on notice of the impairment, which was factored indirectly, although not explicitly, in the ALJ's determination. We then concluded that Rutherford's claim would fail in any event, because Rutherford never argued that her obesity impacted her job performance.

Here, by contract, Diaz asserted–and the ALJ specifically determined–that Diaz's obesity constituted a severe impairment. Further, we cannot conclude, as we did in *Rutherford*, that Diaz's obesity had no impact, alone or in combination with her other impairments, on her workplace performance. To the contrary, Diaz's morbid obesity would seem to have exacerbated joint dysfunction as a matter of common sense, if not medical diagnosis. *See Clifford*, 227 F.3d at 873 (noting significant relationship between obesity and severe arthritis of the knees). SSR 02-1p also underscores the interplay between obesity and joint dysfunction, mobility, and musculoskeletal function. Although in *Rutherford* we expressed some willingness to view the reference to the reports of the claimant's examining physicians as constituting adequate, implicit treatment of the issue by the ALJ, we decline to do so here, where Diaz's obesity was urged, and acknowledged by the ALJ, as a severe impairment that was required to be considered alone and in combination with her other impairments at step three.

*Diaz*, 577 F.3d at 504.

Here, like in *Diaz*, the ALJ determined that plaintiff's obesity was a severe impairment but then failed clarify how plaintiff's obesity factored into her decision as to plaintiff's residual functional capacity. Furthermore, unlike in *Rutherford*, the ALJ in this case does not indicate whether she adopted the findings of the physician or rejected them in whole or in part.[1] Of course, the ALJ

---

[1]It is true that the ALJ states:

I have accorded significant weight to this assessment as to the nature and severity of the claimant's functional limitations because Dr. Potera is a qualified medical consultant specifically trained in the evaluation of medical factors related to issues of disability, and because he cited specific limitations consistent with the evidentiary record as a whole at the time of his assessment.

4

"need not employ particular magic words," but there must be sufficient discussion of the rationale for the decision such that the court can analyze whether it is supported by substantial evidence. *Id.* Therefore, this matter will be remanded for further review.

## II.)    The ALJ Did Not Improperly Account For Limitations Related to Plaintiff's Sjogren's Syndrome

Plaintiff next objects to the ALJ's determination that plaintiff retains the residual functional capacity to engage in the following activities:

> frequent but not constant pushing and pulling with her upper extremities; can never climb ladders, ropes, or scaffolds, but can occasionally climb ramps and stairs; can occasionally balance, stoop, kneel, crouch, and crawl; must avoid frequent exposure to temperature extremes, humidity, fumes, odors, dust, gases, poor ventilation, and hazards including moving machinery and unprotected heights; and can perform frequent but not constant reaching, handling, fingering and feeling.

(R. at 16.)

Plaintiff claims the ALJ erred in her conclusion by improperly relying on evidence of plaintiff's ability to do household chores. (Obj. at 5.) She further argues that the ALJ improperly conflated pain and tenderness and thereby misunderstood her physicians, who "regularly recorded that Plaintiff was experiencing extremely severe pain despite taking pain medications." (Obj. at 6.) She claims that her Sjogren's Syndrome causes her pain on the scale of 10/10 and that the pain limits her ability to function physically and mentally. She argues that the ALJ would have found her much more physically limited if the ALJ had properly considered her pain from Sjorgen's Syndrome.

---

(R. at 19.)

The ALJ's opinion nonetheless indicates that she deviated from the recommendations of the Dr. Potera. (R. at 19.) In sum, neither the ALJ's opinion nor her reference to Dr. Potera's testimony provides the court with sufficient analysis of how obesity played a role in the ALJ's decision as to plaintiff's residual functional capacity.

As for the first objection, the court notes that the ALJ did discuss plaintiff's ability to do household chores. Plaintiff cites the case of *Frankenfield v. Bowen* for the proposition that an ALJ may not rely on a claimant's ability to do household chores in determining the claimant's residual functional capacity. (Obj. at 5.) Plaintiff misunderstands the holding of that case. *Frankenfield* simply held that an ALJ may not ignore objective medical evidence and rely solely on the Judge's observation of the claimant at a hearing and the claimant's testimony as to his ability to perform household chores and daily activities. *Frankenfeld v. Bowen*, 861 F.2d 405, 408 (3d Cir. 1988). While the ALJ did examine plaintiff's ability to do chores in this case, the ALJ also relied on objective medical evidence that corroborated the evidence of plaintiff's ability to do household chores. (R. at 7-8.) In addition, the ALJ relied heavily on the opinion of Dr. Leo Potera, a state agency medical consultant, which indicated that plaintiff was "capable of performing a limited range of light level exertional work." (R. at 19.)

Plaintiff also argues that the ALJ incorrectly found that plaintiff's physicians diagnosed her with mild or minimal pain and tenderness when in fact they diagnosed her with pain on a scale of 10/10. (R. at 18.) Plaintiff argues that she provided medical documentation of her severe pain in the form of physicians' notes, which "regularly recorded that Plaintiff was experiencing extremely severe pain despite taking pain medications." (Obj. at 6.)  However, a review of these records belies plaintiff's claim. The physicians' notes demonstrate that *plaintiff* claimed she had pain on a scale of 10/10, not that the physician *diagnosed* her with pain on the scale of 10/10. The importance of the distinction between plaintiff's subjective opinion and objective medical evidence of her pain is a critical one. As the ALJ explained:

> In considering the claimant's symptoms, I must follow a two-step process in which it must first be determined whether there is an underlying medically determinable physical or mental impairment(s); i.e., an impairment(s) that can be

shown by medically acceptable clinical and laboratory diagnostic techniques that could reasonably be expected to produce the claimant's pain or other symptoms. Second, once an underlying physical or mental impairment(s) that could reasonably be expected to produce the claimant's pain or other symptoms has been shown, I must evaluate the intensity, persistence, and limiting effects of the claimant's symptoms to determine the extent to which they limit the claimant's functioning. For this purpose, whenever statements about the intensity, persistence, or functionally limiting effects of pain or other symptoms are not substantiated by objective medical evidence, I must make a finding on the credibility of the statements based on a consideration of the entire case record.

(R. at 16.)

After reviewing the ALJ's opinion, it is clear that the Judge reviewed the objective medical evidence as well as plaintiff's testimony and came to the conclusion that the objective evidence indicated that plaintiff was not in as much pain as she claimed. This decision is based on substantial evidence, and the court will not disturb the ALJ's findings as to the effect of Sjorgen's Syndrome on plaintiff's residual functional capacity.

## CONCLUSION

In sum, the court will **ADOPT** the Report and Recommendation **IN PART** and **DECLINE TO ADOPT IN PART**. The court will **ADOPT** the Report and Recommendation except for the portion concerning the ALJ's consideration of plaintiff's obesity in determining her residual functional capacity. This matter will be **REMANDED** to the Commissioner for further proceedings in accordance with this memorandum.

BY THE COURT:

_____

C. DARNELL JONES II, J.

ENTERED
JAN 31 2014
CLERK OF COURT

7